UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————

UNITED STATES OF AMERICA,

          v.

ANDRE L. BARNES,
          Defendant.

———————————————————————

REPORT AND RECOMMENDATION
& DECISION AND ORDER
16-cr-6029-DGL-JWF

## Preliminary Statement

By superseding indictment (the "Superseding Indictment") returned on March 1, 2018, the defendant, Andre L. Barnes ("Barnes"), was charged with seven counts of federal sex trafficking-related offenses. See Superseding Indictment (Docket # 97). Prior to and after the Superseding Indictment was returned, Barnes filed six *pro se* motions (Docket ## 90, 91, 92, 93, 94, 107), challenging various aspects of the proceedings against him. The following is my Report and Recommendation and Decision and Order regarding those motions.[1]

## Background

A detailed summary of the procedural history of this case informs the Court's findings, decisions, and recommendations. This case began on September 22, 2015 when the United States government filed a criminal complaint (the "Complaint") against

———————————

[1] By Order of Hon. David G. Larimer, United States District Judge, dated March 31, 2016, all pretrial matters in this case have been referred to the Court pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). Docket # 23.

Barnes and co-defendant, Christopher N. Johnson, Jr. ("Johnson") (collectively "the defendants"). Compl. (Docket # 1). The Complaint alleged that between 2010 and 2013 the defendants engaged in a conspiracy to traffic minors and adults in the Western District of New York and elsewhere - including the State of New Jersey - for the purpose of committing commercial sex acts. See id. at 2, 21-22.

On September 24, 2015, the defendants appeared before the undersigned for their initial appearance. The Court appointed Mark D. Funk, Esq. to represent Barnes and Mark D. Hosken, Esq. to represent Johnson. The next day, Barnes, who at that time was serving a sentence in New York State prison, appeared before the undersigned for a status of custody conference. Barnes requested to remain in state custody and, with the advice of counsel, signed a waiver of rights under the Interstate Agreement on Detainers Act (Docket # 6). Barnes did not request a preliminary hearing.

After an adjournment request as to Johnson that was granted by the Court, counsel for both defendants appeared before the undersigned for a status conference on November 18, 2015 and requested additional time to review discovery. The Court granted the request and thereafter granted three more requests for adjournments. On March 21, 2016, at the request of Attorney Funk, the Court held a status of counsel conference on Barnes' case. Attorney Funk and Barnes informed the Court that the lines of

communication between them deteriorated to the point where Funk as no longer able to effectively assist Barnes in his defense. Attorney Funk requested to withdraw from further representation of Barnes. The Court granted his request. Docket # 19. Two days later, on March 23, 2016, the Court appointed Avik K. Ganguly, Esq. to represent Barnes. Docket # 21. Attorney Ganguly requested an adjournment to consult with his new client and begin reviewing the file. The court granted the request and adjourned the case until April 1, 2016 for a status conference. Id.

On March 31, 2016, the Grand Jury returned a four-count indictment (the "Indictment") charging the defendants with federal sex trafficking offenses. See Indictment (Docket # 22). The defendants were arraigned the next day and entered pleas of not guilty. Docket # 24. After consulting with all counsel, the Court set a schedule for the filing of defense motions and the government's response. Over the objection of Barnes, Attorney Ganguly requested that Barnes undergo an examination to determine competency to stand trial. Docket # 25. The Court granted the request and, by Order dated the same day (Docket # 26), directed the United States Marshal Service (the "Marshal") to transport Barnes to a suitable medical facility to determine whether he was suffering from a mental disease or defect rendering him mentally incompetent to stand trial pursuant to 18 U.S.C. §§ 4241, 4247.

However, due to what was later described to the Court as "miscommunication" between the Marshal and the Federal Bureau of Prisons, the Marshal failed to designate and transport Barnes to a suitable medical facility for a competency examination. <u>See</u> Docket # 32. Instead, Barnes remained incarcerated at a local jail for five months without being evaluated. It was not until Attorney Ganguly inquired of the Marshal and government counsel as to the status of his client's competency examination that the error was discovered.

On August 30, 2016, the Court learned that Barnes had not been examined as directed when it received a letter from Attorney Ganguly. When it learned of the error, the Court promptly contacted the Marshal and put the matter on its docket for status and an inquiry as to how Barnes could remain at a local jail for five months despite a Court Order clearly directing that he be transported to a medical facility for examination. <u>See</u> Docket ## 32, 34. Thereafter, on September 8, 2016, at the request of Attorney Ganguly and with the consent of government counsel, the Court ordered Barnes to be interviewed and evaluated at a <u>local</u> facility to determine his competency to stand trial. <u>See</u> Docket # 33.

On October 27, 2016, the parties appeared before the undersigned to discuss the results of the local examination. Docket # 41. It was reported to the Court that the local examiner,

4

Dr. R.P. Singh, was unable to reach a conclusion as to Barnes' competency to stand trial. See Docket # 86. Dr. Singh recommended to the Court that Barnes be hospitalized for a more thorough evaluation. See id. Accordingly, with the consent of the government and Attorney Ganguly, the Court ordered that Barnes be hospitalized in a suitable federal facility for an examination. Docket ## 41, 42. Because of the inordinate delay in completing the previous evaluation, the Court ordered the transportation and second examination to be completed on an expedited basis. See Docket # 42.

Barnes was transported to the Federal Bureau of Prisons Metropolitan Correctional Center in Chicago, Illinois for the competency examination. On January 6, 2017, the Court received the competency examination report prepared by Dr. Robin Watkins, a Board Certified Forensic Psychologist. After conducting an evaluation, Dr. Watkins found that "Barnes does not meet the criteria for a mental illness that would impair his competency to proceed" to trial.[2] Docket # 88.

On January 12, 2017 Barnes and government counsel appeared before the undersigned to discuss status of counsel and future

---

[2] At a detention hearing held on February 6, 2018, which is discussed below, neither party objected to the competency findings of Dr. Watkins. The Court issued a Report and Recommendation on February 9, 2018 recommending that Barnes be found competent to stand trial (Docket # 96). On March 6, 2018, Judge Larimer adopted the Report and Recommendation (Docket # 101) and concluded that Barnes was competent to stand trial.

proceedings.  Docket # 47.  Attorney Ganguly did not attend the conference.  In correspondence with chambers that same day, Attorney Ganguly informed the Court that he wished to be relieved from further representing the defendant.  See Docket # 87.  Based on Attorney Ganguly's request, and with Barnes' concurrence, the Court granted Attorney Ganguly's request to withdraw from further representation.  One week later, the Court appointed James P. Vacca, Esq. to represent Barnes.  Docket # 48.  Attorney Vacca requested an adjournment to review the file and speak with his client, which the Court granted.  Id.

During this time period, Attorney Hosken submitted several unopposed requests for extensions of time to file motions on behalf of Johnson because the parties were negotiating a plea agreement. The Court granted each of the requests.  Docket ## 28, 30, 37, 40, 45.  On January 24, 2017, Johnson formally entered a guilty plea and Judge Larimer scheduled a date for sentencing.  Docket # 49.

On February 28, 2017, Attorney Vacca informed the Court that he was still in the process of reviewing the file and the discovery that had been provided and requested until May 1, 2017 to file defense motions.  Docket # 52.  Thereafter, Attorney Vacca requested several other unopposed extensions of time to file pretrial motions, all of which were granted by the Court and the time was excluded from the speedy trial clock in the interest of

justice.  See Docket ## 57, 59, 61, 63, 65, 67, 69, 71, 74, 76, 79.

Defense omnibus motions were finally filed on November 17, 2017 (Docket # 81) and oral argument was scheduled for January 5, 2018.  At the request of Attorney Vacca, oral argument was rescheduled for February 1, 2018.  On January 18, 2018, however, Barnes filed a *pro se* motion seeking to "represent himself in this matter and to dismiss previously appointed counsel."  Docket # 83.

The parties appeared for the previously scheduled argument of defense motions on February 1, 2018.  Docket # 85.  At the beginning of the hearing, Barnes requested to proceed *pro se*.  The Court advised him to first discuss his request with Attorney Vacca.  He and Attorney Vacca spoke off the record and Barnes withdrew his request.  The Court scheduled a detention hearing for February 6, 2018 because Barnes had completed his New York State prison sentence and was now being held in primary federal custody.  The Court then heard argument on the defense motions and scheduled an evidentiary hearing on Barnes' motion for suppression of statements.  See Docket # 85.  At the conclusion of the argument, Barnes renewed his request to proceed *pro se*.  The Court told Barnes that before he could proceed *pro se* the Court had an obligation to make sure his decision was knowing and voluntary and that his request would be addressed at the detention hearing.

At the February 6, 2018 appearance for the detention hearing, the court engaged Barnes in a colloquy to make sure his demand to represent himself was knowing and considered. Satisfied that it was, the Court granted Barnes' request to discharge Attorney Vacca and proceed *pro se*. Docket # 89. The Court appointed Attorney Vacca to act as "stand by" counsel to assist Barnes in complying with courtroom procedures and overcoming procedural or evidentiary obstacles. See McKaskle v. Wiggins, 465 U.S. 168, 176-77 (1984). The Court also indicated to Barnes that it would continue to monitor his conduct as the litigation proceeds and reserved the right to reconsider its decision to allow him to proceed *pro se* should the circumstances, his demeanor, statements, arguments, and other factors suggest he was not competent to litigate future proceedings in this case by himself. See Indiana v. Edwards, 554 U.S. 164, 177-78 (2008). Barnes represented himself at the detention hearing.

Despite being represented by counsel, at various times during these proceedings Barnes had submitted several *pro se* motions to the Court.[3] At the conclusion of the February 6, 2018 detention hearing, Barnes requested that these *pro se* motions be filed on

---

[3] Pursuant to standard practice in this District, because Barnes was represented by counsel, the motions were not electronically filed. Instead, the Court forwarded each motion and a cover letter to Barnes' counsel instructing counsel to contact the Court if action needed to be taken. Barnes' attorneys did not reply to any of these mailings or otherwise indicate that the *pro se* motions should be addressed by the Court.

the docket. He also requested that the omnibus motion that Attorney Vacca filed on his behalf be withdrawn and that the previously scheduled suppression hearing be cancelled. The Court granted these requests on the record and directed the Clerk of Court to electronically file Barnes' motions. Docket # 89. The *pro se* motions were filed the next day. Docket ## 90, 91, 92, 93, 94.

On March 1, 2018, the grand jury returned the Superseding Indictment charging Barnes with the following violations: one count of Conspiracy to Commit Sex Trafficking in violation of 18 U.S.C. § 1594(c); three counts of Sex Trafficking of a Minor in violation of 18 U.S.C. §§ 1591(a), 1591(b)(2); one count of Interstate Transportation for the Purpose of Prostitution in violation of 18 U.S.C. § 2421; and two counts of Sex Trafficking by Coercion in violation of 18 U.S.C. §§ 1591(a), 1591(b)(1) and 2. See Superseding Indictment (Docket # 97). The next day, the government filed a response to Barnes' *pro se* motions. Docket # 98.

Barnes was arraigned on the Superseding Indictment on March 8, 2018 and entered a plea of not guilty. Docket # 102. The government advised the court that there was no further discovery to provide to Barnes. Id. Barnes stated that he intended to file an additional motion and the Court set a briefing schedule. Id. After an extension request that was granted by the Court (Docket

# 105), Barnes filed a motion on April 25, 2018 (Docket # 107) and the government responded on May 3, 2018 (Docket # 109). The following is my Report and Recommendation and Decision and Order as to Barnes' six *pro se* motions (Docket ## 90, 91, 92, 93, 94, 107).

## Discussion

In his *pro se* motions, Barnes makes a panoply of wide ranging arguments. Some of his motions repeat arguments made in others. I will address the motions chronologically based on when they were dated by Barnes.

I.    Docket # 92

This motion was dated August 18, 2016 by Barnes. <u>See</u> Docket # 92 at 15, 16. Barnes seeks to dismiss the Indictment due to violations of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* ("the Act"), and what he views as various other procedural and substantive violations. Barnes' motion papers state that this motion was drafted while he was held in a federal correctional facility in the State of Ohio, awaiting the competency examination. <u>See</u> Docket # 92. Although this motion was drafted prior to the return of the Superseding Indictment, the arguments made by Barnes relate generally to the proceedings and not to the specific charges in either the original or superceding indictment.

A.    Speedy Trial Act

1.    Competency Examinations

Barnes' primary argument in this motion is that the delay in completing the competency examination violated his statutory right to a speedy trial. See Docket # 92, at 1, 14. Barnes contends that as a result, the indictment should be dismissed. Id. at 1. This argument is repeated in two other motions. See Docket # 107, at 54; Docket # 90, at 4. Although the delay in completing the competency examination tests was a preventable institutional error, Barnes' statutory right to a speedy trial was not violated.

As explained above, most of the delay in question resulted from the "miscommunication" between the Marshal and the Bureau of Prisons and resulted in Barnes' confinement for five months before the first psychiatric examination was conducted. The Act defines Barnes' rights in this area. Under section 3161(c)(1) of the Act, a defendant must be tried within 70 days of either the filing of an indictment against him or his first appearance on the charge before a judge, whichever is later. 18 U.S.C. § 3161(c)(1). The Act provides that certain periods of time are excludable from computation of this 70-day limit. 18 U.S.C. § 3161(h). Relevant to this case, section 3161(h)(1)(A) allows for the exclusion of any period of "delay resulting from any proceeding, including any examinations, to determine the mental competency . . . of the defendant . . . ." 18 U.S.C. § 3161(h)(1)(A). Section

3161(h)(1)(F), however, provides that delay resulting from transportation to and from a place of examination "shall be presumed to be unreasonable" if it is in excess of ten days. 18 U.S.C. § 3161(h)(1)(F).

In United States v. Vasquez, the Second Circuit held that a delay in completing a competency examination "must be excluded from the calculation of the speedy trial clock whether or not [it is] reasonable." 918 F.2d 329, 333 (1990). There, similar to the present case, the defendant challenged an eight month delay resulting from the failure of the Marshal to transport him to a psychiatric facility. Id. at 331. The Second Circuit noted that under the Act, a delay in excess of ten days for transport to an evaluation was presumptively unreasonable, but held that "even if we assume that administrative mistakes in this case led to an 'unreasonable' delay, that delay would not necessarily have constituted a violation of [the defendant's] rights under the Speedy Trial Act." Id. at 333; (citing United States v. Matsushita, 794 F.2d 46, 51 (2d Cir. 1986) (requiring automatic exclusion of time under § 3161(h)(1)(A))). Barnes cites Vasquez in his motion but only to state that the Vasquez court's interpretation of section 3161(h) is the minority among the Circuit Courts of Appeals. See Docket # 107, at 54. He does not attempt to distinguish the facts of this case from the facts of Vasquez, which are nearly analogous to those presented here. The

interpretation of section 3161(h) articulated by the Second Circuit in Vasquez does appear to be the minority among the Circuits. See United States v. Williamson, 409 F. Supp. 2d 1107, 1107-07 (N.D. Iowa 2006) (discussing Vasquez and citing cases to the contrary). Nonetheless, Vasquez is the law in this Circuit, and thus binding on this Court. Applying Vasquez, the Court determines that the delay in completing the competency examination, though undoubtedly an institutional error and not the fault of Barnes, was nevertheless not a violation of Barnes' statutory speedy trial rights requiring dismissal of the indictment.

### 2. Motions of Co-Defendant

In addition, following the arraignment on the Indictment, the Court set a briefing schedule for the filing of defense motions, and the time was excluded from the speedy trial clock from April 1, 2016 until June 8, 2016. Docket # 24. Beginning on May 31, 2016 (Docket # 27), counsel for Johnson requested multiple extensions of time to file defense motions, which were granted by the Court. Docket ## 28, 30, 37, 40, 45. In cases involving more than one defendant, there is only one controlling speedy trial clock under section 3161(h)(7) unless a motion for severance has been granted. United States v. Piteo, 726 F.2d 50, 52 (2d Cir. 1983); United States v. Barton, 647 F.2d 224, 229 n.5 (2d Cir.), cert. denied, 454 U.S. 857 (1981). Although periods of delay

attributable to a codefendant must be "reasonable" under section 3161(h)(6), "a defendant cannot challenge the reasonableness of a statutory Speedy Trial Act delay unless the defendant first makes a motion for severance from the codefendant causing the delay." United States v. Pennick, No. 10-CR-191-A, 2016 WL 4089192, at *3 (W.D.N.Y. Aug. 2, 2016), aff'd, 713 F. App'x 33 (2d Cir. 2017); see United States v. Brown, No. 04-CR-0454 (LEK), 2005 WL 1417116, at *2 (N.D.N.Y. June 14, 2005) (denying motion to dismiss indictment for Speedy Trial Act violations where defendant had not moved for severance and time was excluded as to codefendant). Neither defendant has moved to sever the proceedings in this case; accordingly, there is only one speedy trial clock.  The time during which Barnes was awaiting the competency examination was excluded from the speedy trial clock based on the Court's original briefing schedule and the requests for extensions of time to file as to Johnson that were granted by the Court.  See Docket ## 24, 28, 30, 37, 40, 45.

        3.   Sixth Amendment

    Although Barnes does not raise this issue in his *pro se* motions, in light of the Second Circuit's recent decision in United States v. Tigano, 880 F.3d 602 (2018), the Court finds it prudent to discuss the defendant's constitutional right to a speedy trial. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the

right to a speedy and public trial . . . ." U.S. Const. amend.
VI.  In 1972, in Barker v. Wingo, the Supreme Court identified
four factors that courts should consider when determining whether
delays in a criminal prosecution violate a defendant's
constitutional right to a speedy trial: "[l]ength of delay, the
reason for the delay, the defendant's assertion of his right, and
prejudice to the defendant." 407 U.S. 514, 530 (1972).  The court
cautioned that "these factors have no talismanic qualities; courts
must still engage in a difficult and sensitive balancing process,"
id. at 533, and "different weights should be assigned to different
reasons," id. at 531.

Length and Cause of the Delay:  In Tigano, the Second Circuit
held that a seven-year delay violated the defendant's Sixth
Amendment right to a speedy trial.  880 F.3d at 619.  This
extraordinary delay was caused by numerous factors, among them,
three separate competency examinations.  See id. at 614.  The third
competency exam was delayed, similar to the case at bar, because
the Marshal failed to provide timely transportation to and from
the site of the examination.  Id.  The Second Circuit held that
this time should be counted against the government in part because
the court should have set a time limit on the examination.  Id.

In the present case, the defendant was subjected to a five-
month delay between the time the Court ordered the first
psychiatric examination to take place and when it actually took

place.  But unlike in *Tigano*, once the Court was informed that
Barnes had not been transported to the examination as directed,
the Court promptly held a conference and ordered that Barnes be
transported to the examination within one week of the Court's
order.  Docket # 42.  Further, the Second Circuit in *Tigano*
determined that the examinations in that case were "needlessly
repetitive and dilatory," 880 F.3d at 613, whereas here, the
examinations were ordered pursuant to Barnes' counsel's motion and
the Court having reasonable cause to believe Barnes was suffering
from a mental disease or defect.  Moreover, in *Tigano*, the
defendant was found competent after each examination, 880 F.3d at
613, but here, the first examiner could not determine whether
Barnes was competent, which caused the Court, with Barnes'
counsel's consent, to order the second examination.  See Docket #
86.

The slow progression in *Tigano*, which was ultimately deemed
unconstitutional, resulted from a mix of various delays; the
competency examinations were but one of them.  See 880 F.3d at 606
("[N]o single, extraordinary factor caused the cumulative seven
years of pretrial delay. Instead, the outcome was the result of
countless small choices and neglects, none of which was
individually responsible for the injustice suffered by [the
defendant], but which together created this extreme instance of a
Sixth Amendment violation.").  Here, the case was initiated by

criminal complaint in September 2015, less than three years ago. This is considerably less time than the seven years found to be unconstitutional in Tigano. In addition, the defendant in Tigano requested to sever the proceedings between him and his co-defendant, but counsel for the defendant did not assert her client's request. 880 F.3d at 616. Here, neither Barnes nor any of his lawyers have sought severance of his case from Johnson.

Defendant's Assertion of the Right: Barnes has never asserted that the delays in this case violated his constitutional right to a speedy trial. He has argued only that they violated his statutory right under the Speedy Trial Act, an argument the Court has rejected as outlined above.

Prejudice to the Defendant: Finally, the Court concludes that Barnes was not prejudiced by the delays. "Prejudice should be assessed in regard to those interests the Sixth Amendment right to a speedy trial is designed to protect, namely, '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" Tigano, 880 F.3d at 618 (quoting Barker, 407 U.S. at 532). The last factor is the "most serious." Id. True, Barnes has been incarcerated during this entire proceeding, but his confinement was due, until recently, to the fact that he was a sentenced state prisoner. In other words, he would have been incarcerated during the delays at issue even if

this federal case had never been brought against him.  See Docket # 85 (counsel indicated on February 1, 2018 that Barnes had finished his state sentence and was now in primary federal custody).  Last, and most importantly, there has been no showing that his defense has been impaired as a result of the delays in this case.

In sum, the Court concludes that the delays in this case did not violate Barnes' Sixth Amendment right to a speedy trial.

B.    Scheduling Order

Barnes argues that the Court violated his statutory right to a speedy trial by ordering him "held without bail for 6 months pending the court to issue a scheduling order . . . ."  Docket # 92, at 2.  A review of the record shows that this assertion is inaccurate.  The Grand Jury returned the Indictment on March 31, 2016.  Docket # 22.  The Court held an arraignment the next day and issued a scheduling order (Docket # 24).  The period of time following the scheduling order and the filing of motions was excluded from the speedy trial clock because, as described above, Barnes was awaiting a competency examination and Johnson's counsel submitted various requests for extensions of time to file motions, which were granted by the Court.  See 18 U.S.C. § 3161(h)(1)(A), (h)(6).  Barnes' contention is without merit.

C.    "Punitive" Competency Examination

Barnes argues that the Court's order for psychiatric examination (Docket # 26) was a "punitive gesture." See Docket # 92 at 3. At the arraignment, Barnes' counsel, Attorney Ganguly, requested that Barnes undergo a competency examination. The competency examination was properly ordered based on the representations made by Attorney Ganguly and because the Court had reasonable cause to believe that Barnes may have been suffering from a mental disease or defect. See United States v. Vamos, 797 F.2d 1146, 1150 (2d Cir. 1986) ("Determination of whether there is 'reasonable cause' to believe a defendant may be incompetent rests in the discretion of the court."). As the Supreme Court has "repeatedly and consistently recognized," Cooper v. Oklahoma, 517 U.S. 348, 354 (1996), "the criminal trial of an incompetent defendant violates due process," Medina v. California, 505 U.S. 437, 453 (1992). The purpose of the Court's Order for a competency examination was to determine whether Barnes "ha[d] sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he ha[d] a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). It simply was not a punitive gesture.

D.    Interstate Transfer

Barnes objects to the fact that he was transferred to federal custody and taken to a federal correctional facility in Ohio for the purpose of conducting the competency examination, rather than remaining in New York State custody.  See Docket # 92, at 3-4.  He argues that this violated the waiver of rights under the Interstate Agreement on Detainers ("IAD") that he signed (Docket # 6) ("the waiver").  See id.  Barnes repeats a similar argument in at least one other motion.  See Docket # 107, at 50.  The waiver provided that Barnes would be housed in state custody during the pendency of this federal prosecution.  See Docket # 6, ¶ 6.  But in order to complete the competency examination Barnes had to be transferred to federal custody.  The Court lacks any control over where a criminal defendant is transferred for the purpose of a competency examination, but once the examination was completed, Barnes was returned to state custody pursuant to the waiver.

Barnes also argues that his interstate transfer from New York to Ohio violated 18 U.S.C. § 5003.  Id. at 11.  Barnes' reliance on section 5003 is erroneous.  That statute does not create any right exercisable by a criminal defendant.  Instead, it provides that the director of the Federal Bureau of Prisons may enter into contracts with officials of States and territories for the purpose of housing persons convicted of state criminal offenses in federal correctional facilities.  See 18 U.S.C. § 5003(a)(1).  To the

20

extent Barnes is arguing that the transfer violated his constitutional due process rights, that argument is foreclosed by well-established case law. Olim v. Wakinekona, 461 U.S. 238, 248 (1983) ("[A]n interstate prison transfer . . . does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself."); see also Howe v. Smith, 452 U.S. 473, 483 (1981) (upholding the constitutionality of section 5003).

Finally, Barnes contends that his detention in Ohio deprived him of access to New York State courts because the prison law library in Ohio did not contain materials on New York law. Docket # 92, at 12. Barnes states that at the time he drafted this motion, (1) he was in the process of appealing his New York State criminal conviction; (2) he had filed a § 1983 lawsuit related to his state conviction that was pending in this District; and (3) he was representing his son as guardian *ad litem* in a personal injury lawsuit in New York. Id. at 12-13. As a result of his detention in Ohio, Barnes argues that he could not effectively litigate those cases. See id. at 13.

In support of his argument, Barnes cites Bounds v. Smith in which the Supreme Court confirmed "that prisoners have a constitutional right of access to the courts." 430 U.S. 817, 822 (1977). That holding was narrowed in Lewis v. Casey where the Supreme Court held that "Bounds did not create an abstract, freestanding right to a law library or legal assistance . . . ."

518 U.S. 343 (1996). Furthermore, the Supreme Court in Lewis held that "[a]lthough Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite." Id. at 351. Under the test established in Lewis, a prisoner must show "that a nonfrivolous legal claim had been frustrated or was being impeded." Id. at 353. Under Lewis, the actual-injury requirement would be satisfied if prison conditions frustrated "attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated" and of civil rights actions related to their criminal convictions. See id. at 354. With the exception of Barnes acting as guardian ad litem, that is the claim presented here - Barnes is challenging his alleged inability to appeal his state conviction and litigate a civil rights action in federal court related to that conviction.[4]

---

[4] Any impairment of Barnes' ability to act as guardian ad litem cannot serve as the basis of a constitutional challenge based on access to the courts.

> "The tools [Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."

Lewis, 518 U.S. at 355 (emphasis in original); see Page v. Lantz, No. 3:05cv1271 (MRK), 2007 WL 1834519, at *4 (D. Conn. June 25, 2007) (holding that inmate was not entitled to legal assistance for a "tort action arising from a motor vehicle accident" because that claim "does not relate to the conditions of confinement").

Despite his claims to the contrary, the Court concludes that Barnes has failed to show that he suffered an actual injury of the type contemplated by Lewis. Barnes does not elaborate on the vague assertion that his state appeal and federal civil rights action were hindered by a lack of relevant legal materials.[5] Barnes has not set forth any facts showing "that he encountered more than mere delay or inconvenience." Benjamin v. Kerik, 102 F. Supp. 2d 157, 164 (S.D.N.Y. 2000), aff'd sub nom. Benjamin v. Fraser, 264 F.3d 175 (2d Cir. 2001); see also Kivela v. U.S. Atty. Gen., 523 F. Supp. 1321, 1325 (S.D.N.Y. 1981), aff'd sub nom. 688 F.2d 815 (2d Cir. 1982) ("It is hardly to be expected, nor is it required, that every federal penal institution have in its library the law books of each of the fifty states of the Union."). Because he has not shown an actual injury, Barnes' argument fails.

E.  Preliminary Hearing

Barnes contends that the Court violated his right to a preliminary hearing pursuant to Federal Rule of Criminal Procedure 5.1. See Docket # 92, at 7. He repeats this argument in at least two other motions. See Docket # 90, at 2; Docket # 91, ¶¶ 17, 30-33. This assertion is incorrect.

Barnes states that he first requested a preliminary hearing on January 31, 2016. See Docket # 90, at 2. However, January 31,

---

[5] Barnes "asserts that he cannot provide adequate assistance in perfecting his appeal and represent his son in civil court without access to N.Y. Law." See Docket # 92, at 13).

2016 was a Sunday and no Court proceedings were conducted that day. He then asserts that he requested a preliminary hearing on March 7, 2016. Docket # 91, ¶ 17. He also states that he requested a preliminary hearing on March 23, 2016 but that the Court adjourned the matter until April 1, 2016. Id. ¶ 30. The government agrees that Barnes demanded a preliminary hearing on March 23, 2016 and the Court scheduled one for April 1, 2016, well "within the required 14-day period." See Gov't's Resp. (Docket # 98), at 13. Because the federal grand jury indicted the defendant within the 14-day period, the government asserts a preliminary hearing was no longer required to be held. Id. I agree. Assuming he made such a request,[6] the grand jury indicted Barnes within 14 days of his demand for a preliminary hearing. The indictment extinguished Barnes' right to have the Court make a probable cause finding at a preliminary hearing. An indictment conclusively establishes probable cause to believe that a defendant committed the crimes with which he or she is charged; therefore, at the time Barnes drafted these motions, a preliminary hearing would have been an empty exercise. 18 U.S.C. § 3060(e); Fed. R. Crim. P. 5.1(a)(2); see Sciortino v. Zampano, 385 F.2d 132, 133 (2d Cir. 1967), cert.

---

[6] A review of the record and the audio recordings from these two court proceedings confirm that the Court granted a short, one-week adjournment so that Barnes' new counsel could review the record. Docket # 17, 21. It does not appear that Barnes requested a preliminary hearing and the Court never scheduled one. Thus, the Court did not intentionally engage in deliberate "gamesmanship" or "outright partiality" in denying him a preliminary hearing as Barnes contends.

denied, 390 U.S. 906 (1968) ("There is extensive authority in the cases for the proposition that the return of an indictment, which establishes probable cause, eliminates the need for a preliminary examination."). Moreover, both of Barnes' motions challenging the lack of a preliminary hearing were dated months after the Indictment had been returned by the Grand Jury. See Docket # 90, at 14 (dated July 12, 2017); Docket # 91 (dated December 19, 2016). In any event, the adjournment between March 23, 2016 and April 1, 2016 did not violate the defendant's right to a preliminary hearing. See United States v. Motte, 251 F. Supp. 601, 604 (S.D.N.Y. 1966) (holding that return of indictment during one-week continuance of preliminary hearing did not violate defendant's right to the hearing).

     F.   Ruse Exception

     Barnes argues that "because the government['] s main witness is the subject of his State appeal and civil complaint, that his interstate detention is being used to delay those proceedings thus hindering his defense in U.S. District Court and should be subject to the Ruse Exception." Docket # 92, at 13. In apparently the only published Second Circuit opinion discussing the "ruse exception," the court defined the exception as "collusion between [immigration] officials and criminal authorities, where the civil detention is merely a ruse to avoid the requirements of the Speedy Trial Act." United States v. Guevara-Umana, 538 F.3d 139, 142 (2d

Cir. 2008) (quoting United States v. Cepeda-Luna, 989 F.2d 353, 354 (9th Cir. 1993)) (alteration in original) (emphasis added).

Barnes' assertion appears to be that his detention in Ohio was intentionally used to interfere with the appeal of his state conviction because, he alleges, a witness/victim's testimony against him at his state trial was "coerced" and a successful state appeal on this ground "would have a collateral effect on his current indictment." Docket # 92, at 13. This argument is meritless. First, assuming *arguendo* that the "ruse exception" applies outside the immigration context in the Second Circuit, Barnes has not alleged any facts that point to collusion between state and federal authorities in this case. Moreover, the ruse exception does not apply where the federal prosecutor acts to delay a state proceeding. Rather, it is an exception that applies the Speedy Trial Act's protections in federal criminal proceedings that are commenced after a federal civil or state detention. See Guevara-Umana, 538 F.3d at 142 ("[P]utative civil detention constitutes, in substance, an arrest in connection with the *later* criminal charges . . . .") (emphasis added); see also United States v. De La Pena-Juarez, 214 F.3d 594, 598 (5th Cir. 2000) (defining the ruse exception as "collusion between federal criminal authorities and civil *or state* officials.") (emphasis added). The ruse exception does not apply to the facts presented in this case.

For these reasons, Barnes motion to dismiss (Docket # 92) should be denied.

## II.   Docket # 91

This motion was dated December 19, 2016.  Barnes' overarching contention is that the Court does not have jurisdiction to hear this case and the United States government may not maintain a criminal prosecution because he and the victims of his alleged crimes are all residents of New York State.  See Docket # 91, ¶¶ 19, 61.  Barnes has repeatedly asserted this broad objection to jurisdiction throughout the prosecution and he makes the same argument in other motions.  See Docket ## 90, 93, 94.  His arguments are misplaced and accordingly without merit.

Although it is not specified in the motion papers, based on the arguments set forth in the motion, the Court will consider the motion to be brought under Federal Rule of Criminal Procedure 12. Rule 12 permits a motion to dismiss an indictment on the ground that "the court lacks jurisdiction." Fed. R. Crim. P. 12(b)(2). In ruling on a motion to dismiss the indictment, the Court assumes the truth of its factual allegations.  United States v. Zemlyansky, 945 F. Supp. 2d 438, 446 (S.D.N.Y. 2013).

Barnes is charged with violating 18 U.S.C. § 1591(a).[7]  See Superseding Indictment (Docket # 97).  Section 1591(a) was enacted

---

[7] The Superseding Indictment added a violation of 18 U.S.C. § 2421(a).  Compare Docket # 22, with Docket # 97.  At the time he drafted this particular motion, the Superseding Indictment had not been returned.

as part of the Victims of Trafficking and Violence Protection Act of 2000 (Public Law 107-386), in which Congress found that "[t]rafficking in persons substantially affects interstate and foreign commerce." 22 U.S.C. § 7101(b)(12). Specifically, section 1591(a) provides:

> Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Section 1591(e)(3) defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

Barnes appears to be contending either that section 1591(a) is not a valid exercise of Congress's Commerce Clause authority or that even if it is, the criminal activity alleged in this case did not affect interstate commerce. These arguments are addressed in turn.

The Commerce Clause of the United States Constitution grants Congress "the power to regulate activities that substantially affect interstate commerce." Gonzales v. Raich, 545 U.S. 1, 17 (2005); United States v. Lopez, 514 U.S. 549, 558-59 (1995). To determine whether an activity regulated by Congress "substantially affects interstate commerce," courts must weigh four factors:

> (1) whether the regulated activity is economic in nature; (2) whether the statute contains an 'express jurisdictional element' linking its scope in some way to interstate commerce; (3) whether Congress made express findings regarding the effects of the regulated activity on interstate commerce; and (4) attenuation of the link between the regulated activity and interstate commerce.

United States v. Guzman, 591 F.3d 83, 89-90 (2d Cir. 2010), as amended (Jan. 8, 2010) (quoting United States v. Morrison, 529 U.S. 598, 611-12 (2000)).

To the extent that Barnes is arguing that section 1591(a) exceeds the scope of Congress's Commerce Clause authority, his argument must be rejected. The cases analyzing whether sex trafficking as prohibited by section 1591(a) "substantially affects" interstate commerce all conclude that the statute is a proper exercise of Congress's Commerce Clause authority. See United States v. Campbell, 111 F. Supp. 3d 340, 346 (W.D.N.Y. 2015) (finding that section 1591(a) is a valid exercise of Congress's Commerce Clause power); see also United States v. Phea, 755 F.3d 255, 263 (5th Cir. 2014) (rejecting the defendant's argument that Congress could not validly regulate purely local activity under

the Commerce Clause pursuant to section 1591(a)); <u>United States v.</u>
<u>Evans</u>, 476 F.3d 1176, 1179 (11th Cir. 2007) (stating that Congress
found that human trafficking, "particularly of women and children
in the sex industry . . . has an aggregate economic impact on
interstate and foreign commerce" and holding that the finding is
not "irrational"); <u>United States v. Chappell</u>, No. CRIM09-139
JNE/JJK, 2010 WL 1131474, at *7 (D. Minn. Jan. 12, 2010), <u>report</u>
<u>and recommendation adopted</u>, No. CRIM09-139 JNE/JJK, 2010 WL
1131473 (D. Minn. Mar. 22, 2010) (agreeing with the "[s]everal
courts [that] have concluded that § 1591 satisfies each of the
four factors" in <u>Morrison</u>). I agree with the reasoning set forth
by these courts and find sex trafficking to have a substantial
effect on interstate commerce. Hence, the prohibition of sex
trafficking is a valid exercise of Congress's Commerce Clause
authority.

    To the extent that Barnes is arguing that, even if prohibition
of sex trafficking is a proper exercise of Congress's Commerce
Clause authority, <u>his</u> alleged conduct lacks any nexus to interstate
commerce,[8] such an argument is not persuasive here. <u>See Campbell</u>,

---

[8] If Barnes is arguing that the United States government does not have authority
to prosecute the activity alleged in the Complaint and the indictments because
those documents state that the activity was purely intrastate (<u>see</u> Docket # 90,
¶¶ 20, 21), that argument is foreclosed by the documents themselves. The
Complaint clearly alleges that there was probable cause to believe that the
defendants transported victims interstate from New York to New Jersey for the
purpose of committing commercial sex acts. <u>See</u> Compl. (Docket # 1), at 21-22.
And the Grand Jury concluded that both indictments provided sufficient probable
cause to believe Barnes had committed the enumerated offenses, all of which
require that the alleged conduct took place in or affecting interstate commerce.

111 F. Supp. 3d at 346 ("Defendant's alleged actions, even if occurring solely in New York, had the capacity when considered with similar conduct by others to have a substantial impact on interstate commerce."); United States v. Paris, No. 03:05-CR-64 (CFD), 2007 WL 3124724, at *7-*8 (D. Conn. Oct. 24, 2007) (finding that "it was within Congress's power to regulate [the defendant's] intrastate recruiting and obtaining of women to perform commercial sex acts."); cf. Taylor v. United States, 136 S. Ct. 2074, 2080 (2016) (holding that for purposes of the Hobbs Act, "a robber who affects or attempts to affect even the intrastate sale of marijuana grown within the State affects or attempts to affect commerce over which the United States has jurisdiction."). The Supreme Court has found that "when 'a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence.'" Raich, 545 U.S. at 17 (quoting Lopez, 514 U.S. at 558). In other words, it does not matter whether Barnes' conduct was intrastate; "[w]hat matters, instead, is that the overall class of activity has the requisite interstate effects." United States v. Needham, 604 F.3d 673, 684 (2d Cir. 2010). In alleging that the defendants trafficked minors for the purpose of committing

---

See United States v. Contreras, 776 F.2d 51, 54 (2d Cir. 1985) ("[A]n indictment returned by a duly constituted and unbiased grand jury satisfies the Constitution as to the existence of probable cause that the defendant committed the crimes enumerated therein.").

commercial sex acts, the Superseding Indictment sufficiently alleges a nexus to interstate commerce.

In sum, I find that it is within Congress's Commerce Clause power to regulate sex trafficking activity, whether or not the activity takes place interstate. Therefore, the United States government has valid authority to prosecute this action. Barnes' motion (Docket # 91) should be **denied**.

III. Docket # 94

This motion was dated January 18, 2017. In his motion papers Barnes demands the Court hold a "Franks Hearing" pursuant to Franks v. Delaware, 38 U.S. 154 (1978). Franks hearings are used by courts to determine whether law enforcement officers made omissions or untruthful statements in applications or affidavits in support of warrants and criminal complaints. See United States v. Montague, No. 14-CR-6136-FPG, 2017 WL 3483665, at *4 (W.D.N.Y. Aug. 15, 2017). "The standard for entitlement to a Franks hearing is high . . . ." United States v. Fernandes, 50 F. Supp. 3d 398, 403 (W.D.N.Y. 2014). Specifically, "[t]o be entitled to a Franks hearing, a defendant must make a 'substantial preliminary showing' that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." United States v. Salameh,

152 F.3d 88, 113 (2d Cir. 1998) (citing United States v. Levasseur, 816 F.2d 37, 43 (2d Cir. 1987)).

In seeking a hearing, Barnes' argues that the Federal Task Force officer in this case made a material misrepresentation in the affidavit used in support of the Complaint because the officer averred that a record check on Barnes shows that Barnes has "a history of prostitution and sex trafficking." Docket # 94; Compl. (Docket # 1), at 3. Barnes' contention is that he does not have a history of sex trafficking; he only has a history of promoting local prostitution. Docket # 94.

Barnes has not alleged sufficient material falsehoods or omissions in the affidavit to merit a Franks hearing. Even if the Court were to disregard the allegedly false information, the supporting affidavit contained sufficient facts to support the finding that there was probable cause to arrest the defendants. In any event, by the time Barnes submitted this motion, the Grand Jury had returned the Indictment this extinguishing the complaint as the operative charging document in the case. As previously discussed, an indictment returned by a duly constituted grand jury establishes probable cause to believe that the defendant committed the crimes alleged therein. See Contreras, 776 F.2d at 54. Such a determination of probable cause is not subject to judicial review. Kaley v. United States, 134 S. Ct. 1090, 1098 (2012). Accordingly, Barnes' motion (Docket # 94) should be **denied**.

IV.  Docket # 93

This motion was dated April 17, 2017.  See Docket # 93. Barnes states that he is challenging the Court's jurisdiction pursuant to Rule 12(b)(2).  Barnes makes various lengthy assertions regarding personal jurisdiction and standing, including references to "minimum contacts" and quotations from and citations to civil cases such as Pennoyer v. Neff, 95 U.S. 714 (1877).  These general arguments regarding civil procedure are irrelevant to this criminal prosecution.  Barnes repeats these arguments in a later motion (Docket # 107), which is discussed below.

In Docket # 93, Barnes also argues that the Indictment is insufficient and should be dismissed because it does not specify that the alleged criminal activity took place "within the special maritime and territorial jurisdiction of the United States . . .." Docket # 93, at 3.  Barnes has repeatedly asserted this argument during court proceedings and in two other motions.  See Docket ## 107, 90.  It is meritless.  Barnes appears to be misreading the statute that he is being charged with violating.[9]  As outlined above, 18 U.S.C. § 1591(a) makes it a crime to traffic minors "in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States . . . ."  18 U.S.C. § 1591(a)(1) (emphasis added).  "Under the

---

[9] For example, in a subsequent motion, Barnes argues that sex trafficking as prohibited by section 1591(a) "is actually a form of piracy committed on High Seas out of the jurisdiction of any state."  Docket # 107, at 12.

conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 116 (2012) (emphasis in original). The activity alleged in the charging documents need not have occurred within the special maritime or territorial jurisdiction of the United States because the grand jury found that there was probable cause to believe that the defendants trafficked minors in interstate commerce, which is the alternative requirement under the statute. Barnes' motion (Docket # 93) should be **denied**.

V.    Docket # 90

This motion was authored by Barnes on July 17, 2017 and is titled "omnibus motion." Docket # 90. I will address each of Barnes' requests below.

A.    Immediate Release from Custody

Barnes seeks an Order from this Court immediately releasing him from custody due to alleged violations of the Speedy Trial Act. The speedy trial violations alleged here have already been addressed and determined to be without merit. Accordingly, this request for release should be **denied**.

B.    Inspection of Grand Jury Minutes

Barnes seeks to inspect the grand jury minutes. "Grand jury proceedings carry a presumption of regularity," and "[a] review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." United States v. Torres,

901 F.2d 205, 233 (2d Cir. 1990) (internal quotations and citations omitted).    Barnes has not made any allegations of government misconduct and merely states in conclusory fashion that if he is not provided such material he "will be deprived of his rights of due process and equal protection of the law . . . ." Docket # 90, at 12.    Barnes' motion for inspection of grand jury minutes is **denied**.

C.    <u>Franks</u> Hearing

Barnes requests that the Court hold a <u>Franks</u> hearing.    Docket # 90.    This request was previously addressed.    It should be **denied**.

D.    Bill of Particulars

Barnes seeks a bill of particulars pursuant to Rule 7(f). "Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him . . . ." <u>United States v. Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987).    Barnes requests that the government provide him with specific information regarding, *inter alia*, the names of the victims, the names of the victims' sexual partners, and the "exact date, time and place at which this commercial transaction(s)" is alleged to have occurred. <u>See</u> Docket # 90 at 9-10.    The Superseding Indictment provides Barnes with ample information regarding the alleged criminal acts, including the initials of the victims. Superseding Indictment (Docket # 97); <u>see</u> <u>United States v. Faux</u>,

No. 3:14-CR-28 SRU, 2015 WL 1190107, at *6 (D. Conn. Mar. 16, 2015) (denying motion for bill of particulars where superseding indictment charging defendant with healthcare fraud contained initials of the relevant patients).

"Whether to grant a bill of particulars rests within the sound discretion of the district court." Torres, 901 F.2d at 234 (quotations and citations omitted). "Acquisition of evidentiary detail is not the function of the bill of particulars." Id. "A bill of particulars is not to be used as a general investigative tool for the defendant, or a device through which to learn the government's evidence or legal theories prior to trial." United States v. Walker, 922 F. Supp. 732, 738-39 (N.D.N.Y. 1996). The Court is also cognizant of the fact that "a bill of particulars serves to restrict how the government may present its case at trial," United States v. Diaz, 303 F. Supp. 2d 84, 89 (D. Conn. 2004), and that the Court should "balance the interest of the government in non-disclosure of its evidence and the interest of the defendant in preparing its defense," United States v. Wholesale Tobacco Distributors of New York, No. 77 CR. 131 (HFW), 1977 WL 1435, at *2 (S.D.N.Y. June 30, 1977). On balance, considering the specificity of the Superseding Indictment and the volume of discovery that has been provided to Barnes by the government, the Court concludes that Barnes has been adequately informed of the

allegations against him.  The request for a bill of particulars is denied.

E.     Promises of Immunity and Witness Lists

Barnes seeks an order compelling the government to disclose the existence and substance of promises of immunity, leniency or preferential treatment made to witnesses, informants, or "cooperating Defendant."  Docket # 90 at 11.  Barnes also asks that the government provide him with a witness list.  Id. at 3. Promises of favorable treatment or leniency made by the government are forms of exculpatory material that must be turned over to the defense in time for the defendant to make effective use of the information.  Giglio v. United States, 405 U.S. 667, 676-77 (1972); United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001). Consistent with the practice in this district, the Government is directed to provide such material to the defendant two weeks before trial or the pretrial conference with the trial judge, whichever is earlier.  The government shall comply with the direction of the trial judge as to when it must provide a witness list to the defense.

F.     Brady Material

The government indicates that it is aware of its responsibilities under Brady v. Maryland, 373 U.S. 83 (1963) and will disclose evidence favorable to Barnes.  See Gov't's Resp. (Docket # 98), at 7.  Because it does not appear that any specific

Brady request is at issue at the present time, the application is therefore **denied without prejudice to renew** should a Brady issue arise.

    G.   Judicial Notice

    Barnes has submitted requests for the Court to take judicial notice of certain facts. The requests demand the Court take judicially notice, *inter alia*, of its own jurisdiction, the domicile of Barnes and the alleged victims, and the language of the relevant statute with which Barnes is charged with violating. See Docket # 90 at 2. The Court must take judicial notice of the laws of the United States, and it is well-aware of its own jurisdictional mandate. But the Court should not go outside the record to supply a fact that is an essential aspect of a party's case unless the fact is clearly beyond dispute. Pina v. Henderson, 752 F.2d 47, 50 (2d Cir. 1985). The domicile of the alleged victims has not been supplied to the Court in any pleading. The Court cannot take judicial notice of a fact not presented in the record. Regardless, the Court would not take judicial notice of that fact as it may be in dispute at trial and reserved for determination by a jury. This request is **denied.**

    H.   Dismiss Indictment

    Next, Barnes requests that the Court dismiss the Indictment on the grounds of "facial insufficiency" and "failure to state an offense." See Docket # 90 at 2-3. The Court has previously

addressed the sufficiency of the Superseding Indictment. The Superseding Indictment explicitly states which criminal statutes Barnes is charged with violating. See Superseding Indictment (Docket # 97). Under the Federal Rules, "[t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Fed. R. Crim. P. 7. The Superseding Indictment conforms to these requirements.

Barnes then asks the Court to dismiss the Indictment for lack of jurisdiction. Docket # 90 at 3. Barnes' various jurisdictional contentions have been previously addressed and found to be meritless.

Barnes next asks the Court to dismiss the Indictment for violations of the Speedy Trial Act and the IAD. Docket # 90 at 3. Both of these contentions have also been previously addressed. Accordingly, it is my Report and Recommendation that this motion to dismiss the Superseding Indictment should be **denied**.

I.    Rule 404(b) Material

Barnes seeks an Order requiring the government to disclose all evidence it intends to use against him pursuant to Federal Rule of Evidence 404 no later than two weeks before trial or the pretrial conference, whichever is earlier. Docket # 90 at 3. That request is **granted**.

J.    Interview of Government Witnesses

Barnes seeks to interview government witnesses.    Docket # 90

at 12.

> Generally, "witnesses belong neither to the defense nor
> to the prosecution" and "both must have equal access to
> witnesses before trial." United States v. Bryant, 655
> F.3d 232, 238 (3d Cir. 2011) (internal quotation marks
> omitted); see also United States v. Medina, 992 F.2d
> 573, 579 (6th Cir.1993) ("Witnesses are neither the
> property of the government nor of the defendant."). A
> defendant's due process rights are violated "[i]f the
> prosecution impermissibly interferes with the defense's
> access to a witness" such that the conduct "undermines
> the fundamental fairness of the proceeding." Bryant, 655
> F.3d at 238. However, "'[n]o right of a defendant is
> violated when a potential witness freely chooses not to
> talk; a witness may of his own free will refuse to be
> interviewed by either the prosecution or the defense."
> Id. at 239 (quoting Kines v. Butterworth, 669 F.2d 6, 9
> (1st Cir.1981)); see also United States v. Bittner, 728
> F.2d 1038, 1041 (8th Cir. 1984) ("Although the
> prosecution and the defense have an equal right to
> interview witnesses in a criminal proceeding, the
> defendant's right of access is not violated when a
> witness chooses of her own volition not to be
> interviewed."); Medina, 992 F.2d at 579 ("[A]
> defendant's right to access is tempered by a witness'
> equally strong right to refuse to say anything.").

United States v. Savage, No. CRIM.A. 07-550-03, 2013 WL 271800, at

*2 (E.D. Pa. Jan. 24, 2013).  Moreover, a defendant has no right

to compel a witness to consent to an interview.  United States v.

Tipton, 90 F.3d 861, 889 (4th Cir. 1996) ("[T]here is no right to

have witnesses compelled to submit to interview . . . ."); United

States ex rel. Jones v. DeRobertis, 766 F.2d 270, 274 (7th Cir.

1985) ("The inability of a defendant to interview witnesses is a

constitutional problem only if the state artificially restricted

the defendant's ability to obtain evidence.").

Here, Barnes has moved for an order directing "the government to provide to defendant's counsel an opportunity to personally request of any and all witnesses whom the government expects to call at trial the consent to a pretrial interview and, if such consent is received, the opportunity to conduct such an interview at a time and location to be set by this court." Docket # 90 at 12. While Barnes' motion refers to his counsel, he has chosen to represent himself. That decision, when considered in conjunction with the fact that he has been detained pending trial, inhibits his ability to investigate his case and confer with witnesses - indeed, that is one of the many disadvantages the Court advised Barnes he would incur as a result of self-representation. Be that as it may, Barnes has not identified what witnesses he seeks to interview or whether the witness is willing to speak to him, nor has he alleged anything the government has done to interfere with his right to try and interview witnesses. As such, his motion is deficient. The Court has appointed stand-by counsel for Barnes and suggests that he confer with his stand-by counsel, James P. Vacca, to obtain advice on how he might be able to determine whether a government witnesses is willing to be interviewed by him.

K.    Motions of Co-Defendant

Barnes seeks to adopt and join all motions and supporting memoranda filed by Johnson. See Docket # 90 at 13-14. However,

prior to filing any pretrial motions, Johnson resolved his case by entering a plea of guilty on January 25, 2017. Accordingly, this motion is **denied as moot**.

### L.    Motion for Leave to File Additional Motions

Barnes seeks leave to file additional motions. Docket # 90 at 14. The Court allowed Barnes to submit a motion challenging the Superseding Indictment. The time for filing pretrial motions pursuant to the Court's scheduling orders has passed. Therefore, this request is **denied**.

### M.    Motion for a Hearing

Barnes requests that a hearing be held at least twenty days prior to trial. Docket # 90 at 14. The Court is unsure what type of hearing Barnes is referring to, but to the extent he is requesting a hearing on the *pro se* motions discussed herein, the Court previously indicated that after receiving the parties' submissions it would determine if oral argument was necessary. Docket ## 108, 89. Having concluded that oral argument would not aid the Court in its determination of the instant motions, this request is **denied**.

## VI.  Docket # 107

Dated on April 16, 2018, Barnes submitted a motion titled "Defendant's Reply to Government's Response in Opposition to Motion for Relief." Docket # 107. The motion is over 80 pages

long and again recites lengthy, rambling arguments about jurisdiction and procedural violations.

A.    Jurisdiction

1.    Personal Jurisdiction

Barnes repeats an argument made in previous motions that the Court lacks personal jurisdiction to require him to appear and defend against this prosecution.  Again, he cites to various civil case precedents.  Personal jurisdiction refers to the power of a court to enter a monetary judgment against a defendant based on his or her "minimum contacts" with the forum.  See, e.g., Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945).  Personal jurisdiction is a concept unique to civil cases and exists to respect the "full faith and credit" clause of the U.S. Constitution.  See U.S. Const., Art. IV, § 1.  Simply put, and as stated previously, Barnes' arguments regarding a supposed lack of personal jurisdiction are not relevant to this criminal prosecution.

2.    Subject Matter Jurisdiction

Barnes also reargues his contention that the Court lacks jurisdiction over the subject matter of this case.  Subject matter jurisdiction refers to the allocation of power between the federal and state court systems.  In the criminal context, by statute, "the district courts of the United States" are vested with "original jurisdiction, exclusive of the courts of the States, of

all offenses against the laws of the United States." 18 U.S.C. §
3231. As Barnes concedes at page 13 of docket entry 107, section
3231 is "the beginning and the end of the jurisdictional inquiry."
United States v. Pemberton, 405 F.3d 656, 659 (8th Cir. 2005)
(quotations and citations omitted).

Barnes is charged by superseding indictment with "offenses
against the laws of the United States." The Court concluded above
that the statute Barnes is charged with violating, 18 U.S.C. §
1591(a), is a valid exercise of Congress' Commerce Clause
authority. This Court is a "district court of the United States."
Thus, Barnes is charged with violating a valid "law[] of the United
States" and he is being prosecuted in a "district court of the
United States." Accordingly, the Court has jurisdiction of the
subject matter of this case. See United States v. Williams, 341
U.S. 58, 65 (1951) (holding that a federal district court "had
jurisdiction of the subject matter, to wit, an alleged violation
of a federal conspiracy statute, and, of course, of the persons
charged.").

B.    Venue

Barnes also argues that the Western District of New York is
an improper venue. Under Rule 18 of the Federal Rules of Criminal
Procedure, "the government must prosecute an offense in a district
where the offense was committed." Fed. R. Crim. P. 18. As Barnes
states throughout his various motions, the alleged criminal

activities took place, at least in part, in the Western District of New York. Indeed, this is the entire basis for Barnes' various jurisdictional arguments; that the events took place in New York and he and the alleged victims are residents of New York. Moreover, the grand jury concluded that there was probable cause to believe the alleged conduct took place "in the Western District of New York, and elsewhere . . . ." See Superseding Indictment (Docket # 97); Indictment (Docket # 22). Accordingly, venue is proper in the Western District of New York.

C.    Standing

Barnes contends that "the plaintiff," by which he means the United States government, has failed to show an injury sufficient to provide the government with standing to maintain this prosecution. Docket # 107, at 5. He cites Lujan v. Defs. of Wildlife, 504 U.S. 555 (1992), which established the elements of an "injury in fact" necessary for a finding that a party in a civil case has standing to bring its claims. Again, as with Barnes' jurisdictional arguments, he has conflated civil proceedings with criminal prosecutions. A federal grand jury in this case concluded that there was probable cause to believe that Barnes committed the charged offenses against the laws of the United States. Therefore, the United States government - "the plaintiff" as Barnes refers to it - has proper authority to prosecute him for those offenses. The government is not representing the victims of Barnes' alleged

crimes; instead, by virtue of Barnes' alleged offenses against the laws of the United States, the United States is itself the harmed party.

D.    Interstate Agreement on Detainers Act

Barnes sets forth several disjointed arguments regarding the IAD. See Docket # 107, at 50-53. The crux of Barnes' contention appears to be that the Court secured his initial appearance in federal court and his transfer from the Ogdensburg Correctional Facility (a state jail) through an arrest warrant (Docket # 7) and a writ of habeas corpus *ad prosequendum* (Docket # 3) without the prosecutor having first lodged a detainer against him. See Docket # 107, at 50. Hence, Barnes contends that the waiver (Docket # 6) was invalid and the "anti-shuttling" provision of the IAD (18 U.S.C. § APP. 2 § 2, Art. IV(e)) was violated when Barnes was returned to state custody before trial on the federal charges. Thus, argues Barnes, the indictment must be dismissed.

This argument depends on the assumption that Barnes' initial appearance was invalid because a detainer had not yet been filed. The only authority Barnes cites for this proposition is 28 U.S.C. § 2241(c)(5), which states that the writ of habeas corpus shall not extend to a prisoner "unless . . . [i]t is necessary to bring him into court to testify or for trial." This is precisely the scenario presented here: Barnes' appearance was secured by a writ of habeas corpus *ad prosequendum* (Docket # 3) and an arrest warrant

(Docket # 7). Barnes' initial appearance did not violate his rights under section 2241(c)(5).

A detainer is "a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." Alabama v. Bozeman, 533 U.S. 146, 148 (2001). "States," for purposes of the IAD, include the Federal Government. United States v. Mauro, 436 U.S. 340, 345 (1978). But the Court is not aware of any legal requirement that a detainer be lodged prior to a defendant's appearance in court when a criminal complaint or indictment is filed against him and his appearance is secured by a writ. Here, Barnes' appearance in federal court was secured by a writ of habeas corpus *ad prosequendum* (Docket # 3), which is not a detainer for purposes of the IAD. Id. at 361. Hence, the protections included in the IAD did not apply to Barnes until after he had signed the waiver. See id. The waiver does not become invalid simply by virtue of him signing it before a detainer was filed. This argument should be rejected.

E.    Speedy Trial Act

Barnes again contends that the Superseding Indictment should be dismissed because of perceived violations of his statutory right to a speedy trial. These arguments are addressed above. They should be rejected.

## Conclusion

Based on the foregoing, it is my Report and Recommendation that Barnes' *pro se* motions (Docket ## 90, 91, 92, 93, 94, 107) should be **denied**. It is my Decision and Order that Barnes' motion (Docket # 90) is **denied in part and granted in part** as set forth above.

IT IS SO ORDERED.

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:     June 29, 2018
           Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED that this Report and Recommendation be filed with the Clerk of Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The District Court will ordinarily refuse to consider on de novo review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." L.R. Crim. P. 59(b)(2). Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the defendant and the attorneys for the Government.

SO ORDERED.

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:    June 79, 2018
          Rochester, New York

---

[1] The pro se defendant and government counsel are advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).